OPINION OF THE COURT
Paul B. Phinney, III, J.
Plaintiff brings a small claims action in the Orangetown *437 Justice Court to recover the sum of $2,312.77, which he contends is the amount of sales tax he would have paid and would have had refunded per the arbitration decision had it not been for the value of his trade-in vehicle on a Chrysler Se-bring which he returned to Chrysler and for which he received a full refund. The court, after researching this issue, finds that this is a case of first impression.
The facts, at least for the purpose of rendering this decision, are not in dispute.
On January 31, 1996, plaintiff went to the Grand Prix Jeep Eagle Chrysler Plymouth-Subaru dealer in Hicksville, New York, and traded in his 1993 Toyota truck for a new 1996 Chrysler Sebring. The sales document, presented to the court as plaintiffs one, shows that the price of the Sebring exactly equaled the trade-in appraisal of plaintiffs 1993 Toyota truck, and the only money exchanging hands was a $10 inspection fee and a $45 license and title fee which the document states the plaintiff paid in cash on delivery. (Plaintiffs testimony was that he also received a refund check from the dealer but had no proof of the same, nor is that fact necessary for the court’s decision.)
The parties agree that there were apparently a significant amount of electrical problems with the Sebring and, after the vehicle was taken back six times for attempted repairs and was in the dealer’s possession for 55 days during the first five months of ownership, the plaintiff then took advantage of Chrysler’s Customer Arbitration Board to resolve the matter. The arbitration was held through the auspices of the National Center for Dispute Settlement with both parties submitting documentary evidence. On June 18, 1996, the National Center for Dispute Settlement rendered a decision wherein it found inter alia, that the customer’s request for a full refund was awarded, and that Chrysler Corporation was required to refund the purchase price of the vehicle to the plaintiff, as well as the cost for license, title and documentation fees to the customer, and refund the total sales tax paid by the customer unless the State refunds the tax directly to the customer. The plaintiff was required to transfer ownership of the vehicle to Chrysler Corporation in a damage-free condition with clear title. The parties agree that, in fact, Chrysler Corporation tendered to the plaintiff a check for $27,209, which was the full purchase price and included the inspection, license and registration fees as well as the cost of the vehicle. Chrysler did not refund any *438 sales tax since none was collected, as the transaction was, in effect, a like-kind exchange and apparently, at least under the dealer’s interpretation of the law, no sales tax had to be paid. No evidence was presented that the dealership ever paid any sales tax to the State of New York on this transaction.
Shortly after receiving the refund check, plaintiff went to Amity Auto Plaza Limited and purchased a 1996 Toyota at a price of $24,455 and paid sales tax in the sum of $2,078.68, along with other fees and costs for a total of $26,648.68.
Plaintiff’s theory of recovery is that although he paid no sales tax on the Chrysler Sebring, the resultant defects in the vehicle caused him to have to obtain a full refund and buy a new car on which he did have to pay a sales tax, and that he lost his opportunity for a tax-free, like-kind exchange due to the defective Chrysler Sebring. In other words, had he gone initially to Amity Auto Plaza Limited and purchased the 1996 Toyota and covered the purchase cost with his 1993 truck trade-in, he never would have had to pay any sales tax.
Chrysler defends first on the grounds that since no sales tax was collected, none could be refunded and since plaintiff paid no sales tax, he suffered no loss. Alternatively, Chrysler argues that the plaintiff should have exhausted his administrative remedies and first applied to New York State for a recovery of the sales tax that would normally have been due on the Chrysler Sebring, then, if denied, follow the appeals process.
The court finds that what took place between the parties was common-law arbitration as there was no written contractual requirement that the parties arbitrate and, accordingly, the CPLR sections dealing with arbitration as found in CPLR article 75 are not applicable. Since this was a nonbinding common-law arbitration, neither party was required to accept it, and either party could have withdrawn from the arbitration prior to the acceptance of the arbitrator’s award. However, once the arbitration award was accepted, it became binding on the parties.
Once the award became binding, both parties lost their ability to bring any action on the original claim. However, the parties are entitled to seek the aid of the court in enforcing the arbitrator’s award.
The arbitrator obviously realized that sales tax was an element of the cost and expense of purchasing a car and ordered the amount of the sales tax paid by the customer to be paid by Chrysler Corporation unless the State refunds the tax directly *439 to the customer. A literal reading of the arbitrator’s award would seem to preclude any recovery by the plaintiff as no sales tax was paid by the plaintiff customer. However, the court finds that such a reading would not do substantial justice between the parties. Although the plaintiff paid no sales tax, he did, as he argues, forego his ability to purchase a replacement vehicle for his 1993 Toyota truck without paying a sales tax due to the fact that the Chrysler Sebring proved defective and had to be returned for a full refund. The court finds that under the substantial justice standard in small claims actions, it can compensate the plaintiff for his lost opportunity to avoid paying sales tax on a replacement vehicle. The concept of compensating a party for lost opportunity is clearly recognized in the statutes that provide for interest on judgments from the earliest date the cause of action existed. (CPLR 5001 [b].) Even though a prevailing party never actually expended the money that the interest represents, the law recognizes that if the party against whom the judgment is entered had paid said monies earlier, the party receiving the judgment could have put that money to work and earned additional monies.
As to the defendant’s defense that the plaintiff should have applied to the State for refund of the tax, the court does not find the same convincing. Although the general rule,is that a party must exhaust his administrative remedies, that rule is not applied blindly or inflexibly. Where administrative remedies would, obviously, be of no avail, a party is not required to pursue them. It seems to this court that to require the plaintiff to apply to the State to refund sales tax money that the State never received would be fruitless.
Plaintiff’s amount of recovery is based on an 81/2 % sales tax on the full amount of the refund, $27,209. The court finds, however, that the defendant actually only spent $2,078.68 in sales tax on purchasing the replacement vehicle and, accordingly, that is the amount the court awards. That award will put plaintiff in the same position he would have been had he initially gone to Amity Auto Plaza Limited and purchased the 1996 Toyota as that is the amount of sales tax he would have avoided paying.
Accordingly this court grants a judgment to the plaintiff in the sum of $2,078.68 with interest at the judicial rate from July 24, 1996 through September 24, 1996 in the sum of $31.18, plus plaintiff’s statutory cost of $50 and his disbursements in the sum of $15 for a total judgment of $2,174.86.